**PUBLISHED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | |
|---|---|
| **BRANDON ENTERPRISES, LLC, ET AL.,** ) ) ) | |
| ) | Case No. 2:04CV00104 |
| Petitioners, ) | |
| ) | **OPINION** |
| v. **)** | |
| ) | By: James P. Jones |
| **UNITED STATES OF AMERICA,** ) | Chief United States District Judge |
| ) | |
| Respondent. ) | |

*Marco M. Rajkovich, Jr., Melanie J. Kilpatrick, and Robert I. Cusick, Wyatt, Tarrant & Combs, LLP, Lexington, Kentucky, and Stephen M. Hodges and Mark L. Esposito, Penn, Stuart & Eskridge, Abingdon, Virginia, for Petitioners Brandon Enterprises, LLC, and Cumberland Valley Contractors, Inc.; R. Kent Westberry and Caroline Pitt Clark, Landrum & Shouse, Louisville, Kentucky, and Charlie R. Jessee, Jessee, Read & Ely, P.C., Abingdon, Virginia, for Petitioner Lonnie Hugh Wilder; Anthony P. Giorno, Assistant United States Attorney, Roanoke, Virginia, for Respondent.*

The petitioners, acquitted in a criminal prosecution for falsifying dust samples from a coal mine, now seek their attorneys' fees in a proceeding under the Hyde Amendment. Because I find that the position of the United States was not vexatious, frivolous, or in bad faith, I will deny the petitions.

I

An indictment returned by a grand jury of this court charged Lonnie Hugh Wilder, Brandon Enterprises, LLC ("Brandon"), and Cumberland Valley Contractors, Inc. ("Cumberland") with knowingly and willfully reporting to the federal Mine Safety and Health Administration ("MSHA") certain false coal mine respirable dust samples. *See* 18 U.S.C.A. §§ 1001(a)(1), (2) (West 2000). In addition, the defendants were charged with willfully violating a mandatory mine safety standard by failing to take the dust samples. *See* 30 U.S.C.A. § 820(d) (West 1986). The parties waived a jury, and a bench trial was held on October 12-15, 2004. At the conclusion of the government's case in chief, judgment of acquittal was entered as to two of the counts, and at the conclusion of the case, the defendants were acquitted by the court of the remaining charges.

Following the acquittal, the defendants filed timely petitions pursuant to the Hyde Amendment, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (found as statutory note to 18 U.S.C.A. § 3006A (West 2000)), seeking awards of reasonable attorneys' fees and other litigation expenses incurred in their defense. The parties have filed briefs and submitted affidavits and exhibits in support of their respective

positions.[1]  In addition, the transcript of the criminal trial has been prepared. The petitions are now ripe for decision.

II

The Hyde Amendment provides, in pertinent part, that

[T]he court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) . . . may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.  Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.

Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519.

The burden of proof to show that the position of the United States was vexatious, frivolous, or in bad faith is on the petitioner, rather than on the government to show otherwise. *United States v. Holland*, 214 F.3d 523, 526 n.6 (4th Cir. 2000). As used in the Hyde Amendment, "[v]exatious means 'without reasonable or probable cause or excuse.'" *United States v. Bunn (In re 1997 Grand Jury)*, 215 F.3d 430, 436 (4th Cir. 2000) (citation omitted).  Frivolous in this context means "'groundless . . .

---

[1] No party has requested an evidentiary hearing or oral argument.  Certain of the evidence submitted consists of grand jury testimony or material, which has been placed under seal.

with little prospect of success; often brought to embarrass or annoy the defendant.'" *Id.* Bad faith "'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Id.* The Hyde Amendment requires proof of more than that the government's case was "not substantially justified" or that the government's investigation was negligent or sloppy. *See United States v. Truesdale*, 211 F.3d 898, 908-09 (5th Cir. 2000).

The government does not dispute that the petitioners were the prevailing parties in the criminal prosecution or that otherwise the petitioners meet the technical requirements of the Hyde Amendment.[2] Further, the government does not contest that the attorneys' fees and other litigation expenses claimed are reasonable. The government does contend that its position was not vexatious, frivolous, or in bad faith. I agree with the government.

---

[2] Brandon and Cumberland have shown that they fall below the financial ceilings for qualified claimants under the Equal Access to Justice Act. *See* 28 U.S.C.A. § 2412(d)(1)(D)(2)(B) (West Supp. 2004) (exempting individuals whose net worth exceeds $2,000,000 and business entities whose net worth exceeds $7,000,000 and have more than 500 employees). Wilder has submitted copies of his tax returns, although they do not show his net worth. There is a question as to whether the net worth requirements necessarily apply to the Hyde Amendment. *See United States v. Holland*, 34 F. Supp. 2d 346, 357-58 (E.D. Va.), *reconsidered on other issue*, 48 F. Supp. 2d 571 (E.D. Va. 1999), *aff'd*, 214 F.3d 523 (4th Cir. 2000). In any event, the government does not dispute that Wilder is a qualified claimant.

It was undisputed at the criminal trial that defendant Wilder was responsible for taking mandatory respirable dust samples at certain coal mines in which defendants Brandon and Cumberland had an interest.[3]  At bottom, the government's theory of the case was that on several occasions—namely, July 28 and 29, October 6, 7, and 8, and December 9, 10, and 11, 1999—Wilder sent to MSHA dust samples that had not actually been taken at the mines in question.  His primary motive, the government argued, was not because legitimate samples would have shown the mine out of compliance with the applicable respirable dust standards, but because he did not have time to take all of the dust samples required of him and his boss did not want to spend additional money to hire a qualified assistant.

The government's proof consisted of circumstantial evidence, as well as the testimony of three former employees at the Brandon 2 Mine.  Prominent among those was Jerome Dean, who worked as a mine superintendent on the day shift from late June through early September 1999. He told MSHA investigators and testified before

---

[3] Brandon and Cumberland were both owned in equal shares by an individual named Stanley Ditty and another person.  Brandon operated certain of the mines and Cumberland provided the equipment and supplies.  It was contended by the defendants that Wilder was not actually employed by either Brandon or Cumberland, but it was clear that he took orders from Ditty.  It is not unusual in the Appalachian coal mining business for an owner to operate a mine through several different business entities for various business and tax reasons. *See Tri-State Leasing Corp. v. United States Trustee (In re Coal River Resources, Inc.)*, Nos. 2:04CV75, 76, 77, 78, 2005 WL 372203, at *1 (W.D. Va. Feb. 15, 2005) (describing similar situation).

the grand jury and at trial that during his tenure no dust samples had been taken by Wilder on that shift and that had they been taken he would have known it. He further testified that he had seen a posted list of dust samples allegedly taken at the mine, and went to his immediate supervisor at the mine and asked, "What is this?" and the supervisor said, "Don't worry about that. Dave [another supervisor] takes care of that stuff." (Tr. 1-186.) He also testified that it was possible that he had been on vacation on the days that Wilder had reported dust samples having been taken at the mine, but that had he been on vacation, he believed that his immediate supervisor would have told him that the samples in question had been taken while he had been gone.

Two other former employees similarly testified for the government. Amon Brock, a foreman, testified that for the approximately four months he had worked at Brandon 2 Mine, only two company dust samples had been taken on the evening shift, probably in December 1999 and January 2000. Rick Sturgill, another foreman, worked at Brandon 2 Mine from June of 1999 until March of 2000. He testified that he had seen only one or two company dust samples taken on the day shift. He copied a list of samples posted on the bulletin board at the mine because he "knew . . . that they weren't right." (Tr. 2-63.) He later gave his notes to an MSHA investigator. At the time, he was not aware that the list included irrelevant samples—those taken by

MSHA and company samples taken at other mines and at the mine in question before Brandon took it over.

Through their evidence, the defendants contended that even were the government witnesses being truthful, they would not be in a position to necessarily know when dust samples were being taken, because of their responsibilities away from the operating coal face, where dust samples were normally taken. They also introduced the testimony of miners who claimed that they had participated in company dust sampling.[4] In addition, the defendants presented evidence that even though Wilder had only six dust pumps available for use, he could take more than six samples a day by the use of recharged batteries, thus negating one of the government's arguments. The defendants also showed that Wilder could take a shorter route between the mines than the government had assumed, thus allowing him more time to take samples from different mines.

The petitioners argue that the government ignored the exculpatory evidence in its prosecutorial decision, and overvalued any evidence of wrongdoing. While I embrace the proposition that "[t]he integrity of the judicial process is threatened when

---

[4] The process of respirable dust sampling requires that a miner be equipped with a "dust pump" worn on the miner's person during the entire shift. The tamper-proof filter of the pump, containing the amount of dust collected, is then sent to MSHA for analysis. The defendants pointed out that a miner who wears a dust pump is more likely to be aware of dust sampling than a supervisor who did not wear one.

prosecutors ignore evidence or fail to pursue potentially exculpatory evidence," Lynn R. Singband, *The Hyde Amendment and Prosecutorial Investigation: The Promise of Protection for Criminal Defendants*, 28 Fordham Urb. L.J. 1967, 2000 (2001), I find that the government did not violate its obligations in this case. As it turned out, the government's evidence did not have sufficient weight to prove the guilt of the defendants beyond a reasonable doubt. There was a reasonable doubt that the perceptions of the crucial government witnesses were based on more than misunderstandings or mistakes. However, this is not proof that the government's conduct was sanctionable. If it were, every acquittal would be followed by the government's payment of attorneys' fees. That would be a result clearly not intended by Congress.

In most criminal cases that go to trial, there is some exculpatory evidence reasonably known to the government prior to trial. The government cannot be faulted for proceeding with a prosecution even in the face of some evidence that the defendant is not guilty, so long as the prosecutor engages in an objectively balanced analysis of the case, keeping in mind the prosecutor's equal obligation to do justice to the defendant. In the present case, I find that the government met its obligation.

The petitioners argue that there is evidence that the prosecution was motivated by bad faith. In particular, they contend that bad faith is shown by the following

circumstances: (1) that a lead MSHA investigator, RosAnn Beaty, testified falsely before a grand jury (not the charging grand jury in this case) that marijuana had been found in the Brandon 2 Mine; (2) that during the trial, information concerning Brandon and Cumberland was "blocked" by MSHA on its public website; and (3) that MSHA issued respirable dust standard violations to three other mines owned by Stanley Ditty at about the time of the trial, even though these mines had not before experienced similar violations. The petitioners characterize these incidents as efforts to "harass or annoy" the defendants and prejudice their defense. (Pet'rs' Reply Br. 10-11.)

Accepting for the purposes of argument that all of these events occurred, I find that even in combination they do not rise to a level that would impose liability on the government. *See United States v. Schneider*, 395 F.3d 78, 90 (2d Cir. 2005) (finding that Congress did not intend for Hyde Amendment to cover trivial instances of offending conduct by government representatives).

In summary, given my opportunity to consider the evidence at trial, along with the additional materials submitted by the parties, I find that the position of the United States was not vexatious, frivolous, or in bad faith in the criminal prosecution of the petitioners and thus they are not entitled to relief pursuant to the Hyde Amendment.

III

For the foregoing reasons, I will enter an order denying the Applications for Attorneys' Fees and Expenses.

>                             DATED: February 28, 2005
>
>                              /s/ JAMES P. JONES
>                             Chief United States District Judge